JACKSON COUNTY ENVIRONMENTAL COMMITTEE et al.; Martin, Appellant,

v.

SCHREGARDUS, Dir., et al., Appellees.*

[Cite as *Jackson Cty. Environmental Commt. v. Schregardus* (1994), 95 Ohio App.3d 527.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93APH09–1240, 93APH09–1241.

Decided June 9, 1994.

* Reporter's Note: Discretionary appeals to the Supreme Court of Ohio were not allowed in (1994), 70 Ohio St.3d 1476, 640 N.E.2d 848.

*William C. Martin*, for appellant *Agnes I. Martin*.

*Lee Fisher*, Attorney General, *James O. Payne, Jr.* and *Gertrude Kelly*, Assistant Attorneys General, for appellee *Donald Schregardus*, Director of Environmental Protection.

*Thompson, Hine & Flory, J. Wray Blattner* and *Ben L. Pfefferle*, for appellee Mead Corporation.

JOHN C. YOUNG, Judge.

On August 6, 1990, the Director of the Ohio Environmental Protection Agency ("director") issued to appellee, the Mead Corporation ("Mead"), a permit to install ("PTI") authorizing Mead to land-apply its wastewater treatment sludge at two abandoned stripped mine lands which are owned by Mead and are located in Jackson County, Ohio. Appellant, Agnes I. Martin, appealed the director's action to the Environmental Board of Review ("EBR").

On February 14, 1992, the parties submitted a joint stipulation of issues and facts identifying two issues to be resolved by the EBR: (1) whether the director acted unlawfully or unreasonably in issuing the PTI without first having promulgated rules establishing standards for dioxin in the application of paper mill sludge to abandoned mine lands; and (2) whether the public notice of the PTI was adequate. The parties submitted the matter to the EBR and waived an evidentiary hearing.

On August 10, 1993, the EBR issued findings of fact and conclusions of law and issued a final order which affirmed the director's issuance of the PTI. Thereafter, appellant filed a notice of appeal with this court, asserting the following assignments of error:

"1. The Environmental Board of Review erred when it concluded as a matter of law that Appellant lacks standing to attack the validity of the 'Guidelines for Land Application of Paper Mill Sludge'. Item # 7 in the Conclusions of Law in the Agency's *Findings of Fact, Conclusions of Law and Final Order.*

"2. The Environmental Board of Review erred when it concluded as a matter of law that the 'Guidelines for Land Application of Paper Mill Sludge' were not agency rules, and hence were not required to be adopted pursuant to the

mandates of Ohio Revised Code Chapter 119. Item # 6 in the Conclusions of Law in the Agency's *Findings of Fact, Conclusions of Law and Final Order.*"

In the first assignment of error, appellant argues that the EBR erred in concluding that appellant lacked standing to attack the validity of the guidelines for land application of paper mill sludge ("guidelines"). The EBR specifically found that, if the guidelines actually were rules which should have been adopted pursuant to R.C. Chapter 119, appellant lacked standing to raise this issue at this time. The EBR reasoned that inasmuch as the guidelines were issued by the director on April 24, 1989, any challenge should have been made no later than May 24, 1989 in order to be timely pursuant to R.C. 3745.04. Appellant counters that argument by stating that if the guidelines had been adopted pursuant to the procedures required by R.C. Chapter 119, including notice and hearing, then appellant would have been able to appeal in a timely manner pursuant to R.C. 3745.04. Appellant argues that, inasmuch as these guidelines were instituted informally, the general public, including appellant, is not in a position to be able to appeal policy decisions which actually should be properly promulgated pursuant to R.C. Chapter 119. As such, it is only when these guidelines or policy statements are about to be put into effect that people in appellant's position actually have notice and are able to institute an appeal in the matter.

In the second assignment of error, appellant argues that the guidelines herein constituted a rule which should have been formally promulgated pursuant to the requirements of R.C. Chapter 119. On the other hand, the EBR concluded that the guidelines were standards which solely related to the land application of sludge by Mead and, as such, these guidelines were not required to be adopted pursuant to the mandates of R.C. Chapter 119.

In adopting a "rule," an agency is required to comply with the promulgation procedure set forth in R.C. Chapter 119. See R.C. 119.02. "Rule" is defined in R.C. 119.01(C) as: *"any rule, regulation, or standard,* having a *general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency,* and includes any appendix to a rule. 'Rule' does not include any internal management rule of an agency unless the internal management rule affects private rights." (Emphasis added.)

Mead argues that the guidelines do not have general and uniform operation in that they apply only to Mead and the application of paper mill sludge from Mead's operations. On the other hand, appellant argues that, although the guidelines are directed at Mead, there is nothing which would necessarily confine the application of these guidelines simply to Mead. Appellant argues that some

other company may apply sludge from Mead's operations on certain other lands. Therefore, appellant argues that the guidelines do have uniform and general application.

In the present case, the general public does have a particular interest in the application of paper mill sludge because paper mill sludge contains certain amounts of dioxin. It is undisputed by the parties that the scientific community continues to evaluate the toxicity of dioxin and that there are no formally promulgated regulations establishing allowable concentrations of dioxins in paper mill sludge which is to be land-applied pursuant to this PTI or any other permit. As such, the effects of the application of paper mill sludge containing dioxins on land and water sources neighboring an area where one is permitted to land-apply paper mill sludge is not completely understood. Obviously, land and water sites which border an area where paper mill sludge containing dioxins is applied could potentially be adversely affected by the application of such paper mill sludge. As such, the general public certainly has reason to be concerned.

Upon a careful review of the guidelines, this court finds that the guidelines meet the foregoing statutory definition of "rule" as determined by the General Assembly. As appellant points out, the guidelines may be limited to land-application of sludge from Mead's paper mill operations; however, the guidelines are not specifically directed solely at the application of such sludge by Mead. Even if the guidelines were specifically designated to Mead's application of its own paper mill sludge to certain land, this court hesitates to state that these are the types of guidelines which should be informally established by an agency when the applications may have far-reaching effects on the population at large, especially when that population is not given an opportunity to contest the guidelines through the formal procedures provided by R.C. Chapter 119.

As the Supreme Court reasoned in *Condee v. Lindley* (1984), 12 Ohio St.3d 90 at 93, 12 OBR 79 at 81, 465 N.E.2d 450 at 452, "[t]he rulemaking requirements set forth in R.C. Chapter 119 are designed to permit a full and fair analysis of the impact and validity of a proposed rule." By failing to rule-file the instant guidelines, the director has effectively denied interested members of the public a full and fair analysis of the impact and validity of the standards set forth therein and the effects on the public health and safety. Therefore, this court holds that the guidelines at issue in the present case which set standards for the "safe" application of paper mill sludge containing dioxins under certain specific conditions are "rules" which should have been formally promulgated pursuant to R.C. Chapter 119.

As such, appellant's second assignment of error is well taken and is sustained.

■ Concerning appellant's first assignment of error, this court agrees with appellant's position. Because the guidelines were not formally promulgated pursuant to R.C. Chapter 119, members of the public are not required to appeal from those guidelines which should have been promulgated as rules pursuant to the time limitations imposed on people to appeal from a properly promulgated rule. As appellant states, in *Ohio Nurses Assn., Inc. v. Ohio State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 540 N.E.2d 1354, the registered nurses sued the state agency in the court of common pleas seeking declaratory and injunctive relief to prevent the agency from implementing the guidelines set out in the agency's "position paper." The nurses did not appeal from the issuance of the "position paper"; instead, they brought their action for declaratory and injunctive relief to prevent the agency from implementing the "rule." As such, this court finds that appellant had standing to bring the instant appeal and that such standing was not time-barred because of appellant's failure to meet the time limitations imposed for appealing from the proper promulgation of a rule. Appellant brought this action when it became apparent that the guidelines at issue were about to be put into effect by the granting of the PTI in question allowing Mead to actually apply the paper mill sludge.

As such, appellant's first assignment of error is well taken and is sustained.

Based on the foregoing, appellant's first and second assignments of error are sustained and the order of the EBR is reversed. As such, this court finds that the "guidelines" at issue constitute a rule which should be subject to the procedures of rulemaking set forth in R.C. Chapter 119. The order is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Order reversed*
*and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.