CONCERNED CITIZENS OF CENTRAL OHIO et al., Appellants,

v.

SCHREGARDUS, Director of Environmental Protection et al., Appellees.

[Cite as *Concerned Citizens of Cent. Ohio v. Schregardus*, 148 Ohio App.3d 31, 2002-Ohio-1074.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–765.

Decided Mar. 14, 2002.

**32**

———————

Richard C. Sahli, for appellants.

Betty D. Montgomery, Attorney General, Margaret A. Malone and David G. Kern, Assistant Attorneys General, for appellee Director of Environmental Protection.

Porter, Wright, Morris & Arthur and David E. Northrop, for appellee Buckeye Egg Farm, L.P.

---

BOWMAN, Judge.

{¶ 1} Appellants, Concerned Citizens of Ohio and ten individuals, appeal an order of the Environmental Review Appeals Commission ("ERAC") in favor of appellees, Christopher Jones, as the Director of the Ohio Environmental Protection Agency ("OEPA"), and Buckeye Egg Farm, L.P. ("Buckeye Egg"). In its order, ERAC affirmed the OEPA director's decision to grant Buckeye Egg's permits to expand its operations and install an egg-processing wastewater system.

{¶ 2} The facts underlying this matter are undisputed. In March 1996, the director of OEPA approved an initial livestock waste management plan for Buckeye Egg's Marseilles egg production facility. The plan provided for construction of fourteen laying hen barns to house a total of approximately 2.5 million chickens.

{¶ 3} In April 1998, Buckeye Egg submitted applications for the two permits at issue. First, Buckeye Egg sought approval to expand its Marseilles facility operation from fourteen to sixteen barns with an overall capacity of up to 3,312,352 chickens. Second, Buckeye Egg sought approval for construction of an egg-processing wastewater treatment, storage and disposal system at the expanded facility.

{¶ 4} On October 19, 1998, the OEPA director approved both permits. On November 17, 1998, appellants timely appealed the director's decision to ERAC. In a motion for summary adjudication filed on August 24, 1999, appellants argued that the director had erroneously determined that the facility's air emissions were exempt from regulations without first conducting a site-specific evaluation, as required by law. In his response to appellants' motion, the OEPA director acknowledged that he had not conducted a site-specific review of the facility prior to issuing the permits. He maintained, however, that a complete review subsequent to the issuance of the permit to install was conducted in January 1999, and a determination was ultimately made that the facility was entitled to the agricultural exemption contained in R.C. 3704.01(B).

{¶ 5} ERAC denied appellants' motion for summary adjudication on January 13, 2000. On February 11, 2000, the OEPA director moved to remand the case because additional information had been provided to the OEPA that raised technical questions regarding the possible emissions of air contaminants from this facility and whether the "agricultural exemption" is applicable. ERAC denied the motion to remand but postponed its de novo hearing to allow the parties to

further evaluate the "new information." In March 2000, the OEPA director renewed his motion to remand. On July 13, 2000, ERAC denied the renewed motion to remand.

{¶ 6} ERAC conducted a de novo hearing on the merits of the appeal on January 22 and 23, 2001. At issue before ERAC was (1) whether it was lawful for the OEPA director to complete his site-specific evaluation of the Marseilles facility for purposes of establishing its entitlement to the air exemption contained in R.C. 3704.01(B) *after* issuing the permits; and (2) whether the OEPA director lawfully and reasonably concluded, albeit after the permits were issued, that the emissions from the facility satisfied the criteria for the air exemption.

{¶ 7} ERAC concluded that the director reasonably concluded that the emissions satisfied the criteria for exemption provided in R.C. 3704.01(B), which provides as follows:

{¶ 8} "(B) 'Air contaminant' means particulate matter, dust, fumes, gas, mist, radionuclides, smoke, vapor, or odorous substances, or any combination thereof, but does not mean emissions from agricultural production activities, as defined in section 929.01 of the Revised Code, that are consistent with generally accepted agricultural practices, were established prior to adjacent nonagricultural activities, have no substantial, adverse effect on the public health, safety, or welfare, do not result from the negligent or other improper operations of any such agricultural activities, and would not be required to obtain a Title V permit. * * *"

{¶ 9} ERAC concluded that all the statutory criteria were met. Among other things, ERAC determined that agricultural production activities at the egg farm facilities were established prior to adjacent nonagricultural activities. In reaching its decision, ERAC noted that aerial photographs established that the land upon which the egg farm is located has been continuously used for some form of agricultural activity since at least 1939 and that, in 1939, all of the property adjacent to Buckeye Egg was utilized as cropland.

{¶ 10} ERAC further concluded that the OEPA director's failure to timely conduct a site-specific review did not invalidate the permits. ERAC stated that, "since such a determination was made shortly after the issuance of the permits, and since the Commission agrees with the determination which the Director ultimately reached, we find it would be senseless to remand the permits at this juncture with an order that the Director perform an act which he has already completed to our satisfaction."

{¶ 11} On appeal to this court, appellants assert the following assignments of error:

{¶ 12} "I. The Environmental Review Appeals Commission erred in finding that the director's failure to conduct all lawfully required reviews and make all

lawfully required determinations required by Ohio Adm. Code § 3745–31–05 before issuing the permit and plan approval does not render those permits unlawful and void.

{¶ 13} "II. The Environmental Review Appeals Commission erred in finding the subject facility exempt pursuant to Ohio Rev. Code § 3704.01(B) from the requirement to obtain an air pollution control permit where there were prior, adjacent nonagricultural activities disqualifying the facility from such exemption."

{¶ 14} The appellate standard of review governing this appeal is set forth in R.C. 3745.06, which provides that this court "shall affirm the order complained of * * * if it finds * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." For the reasons that follow, we reverse ERAC's order.

{¶ 15} By their first assignment of error, appellants argue that ERAC erred in concluding that the permits were lawful and valid notwithstanding the OEPA director's failure to timely conduct a site-specific evaluation. We agree.

{¶ 16} Ohio Adm.Code 3745–31–05(A)(2) empowers the OEPA director to issue a permit if he determines, among other things, that the action will not violate air pollution laws, including emissions standards adopted by the OEPA. The director is required to consider compliance with all applicable laws *prior* to issuing a permit. *Williams v. Schregardus* (1994), 96 Ohio App.3d 664, 668–669, 645 N.E.2d 840. It is undisputed that the OEPA director did not complete a site-specific review to determine the applicability of the R.C. 3704.01(B) exemption prior to issuing the permits at issue. Accordingly, the director did not comply with Ohio Adm.Code 3745–31–05(A)(2) and his issuance of the permits was not lawful.

{¶ 17} Nor was ERAC empowered to validate the permits based on its de novo review. Pursuant to R.C. 3745.05, ERAC could affirm action by the OEPA director only if it found "that the action appealed from was lawful and reasonable." Because the director did not comply with Ohio Adm.Code 3745–31–05(A)(2), his action in issuing the permits was not lawful. Under these circumstances, ERAC was obligated to "make a written order vacating or modifying the action appealed from."

{¶ 18} Citing *Licking Cty. Citizens for a Safe Environment v. Schregardus* (2000), 136 Ohio App.3d 645, 737 N.E.2d 583, Buckeye Egg argues that the director's failure to conduct the exemption evaluation before he issued the permits amounts to harmless error because the director eventually undertook the evaluation. We conclude that *Licking Cty.* is inapposite. In *Licking Cty.*, this court concluded that "[a]n appealing party is not harmed by ERAC's failure to conduct a *de novo* hearing where the result of the case would not have been any

different had the required hearing been held." Id. at 648, 737 N.E.2d 583. In the instant matter, it was the director, and not ERAC, who failed to perform the mandated requirement of conducting a site-specific evaluation prior to issuing the permits.

{¶ 19} As we noted in *Licking Cty.*, "The director, and not ERAC, is charged with making the initial determination on [air pollution] issues." Id. In the instant action, the director did not make the initial determination before he issued the permits. We decline to rule that the director's failure to make an initial determination prior to issuing permits, as expressly required by Ohio Adm.Code 3745–31–05(A)(2), amounts to harmless error.

{¶ 20} We sustain appellants' first assignment of error.

{¶ 21} Because we have concluded that the permits were invalid because they were not issued in accordance with Ohio Adm.Code 3745–31–05(A)(2), we decline to rule on the merits of appellants' second assignment of error. Nonetheless, we take this opportunity to express our reservation about the approach used to evaluate whether the agricultural production activities at issue were established prior to adjacent nonagricultural activities. We suggest that the methodology for evaluating this criterion for exemption from regulation of agricultural emissions may warrant rulemaking by OEPA.

{¶ 22} R.C. 3704.04 requires that the adoption, modification, and repeal of "rules" for air pollution control be in accordance with R.C. Chapter 119. R.C. 119.01(C), in turn, provides the following definition of a "rule" in the context of administrative law:

{¶ 23} " 'Rule' means any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule. * * *"

{¶ 24} "The rulemaking requirements set forth in R.C. Chapter 119 are designed to permit a full and fair analysis of the impact and validity of a proposed rule." *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 93, 12 OBR 79, 465 N.E.2d 450. In *Jackson Cty. Environmental Commt. v. Schregardus* (1994), 95 Ohio App.3d 527, 530–531, 642 N.E.2d 1142, this court cautioned that OEPA cannot avoid the requirements for rulemaking merely by applying general guidelines on a case-by-case basis.

{¶ 25} We suggest that the methodology for evaluating the criterion at issue in this case involves standards having general and uniform operation. Rather than attempt to apply uniform standards in the instant matter, however, it appears that the OEPA director and ERAC selected 1939 as the year by which to evaluate for adjacent nonagricultural activities for the arbitrary reason that aerial

photographs were taken in that year. In the absence of a rule to govern the methodology for determining whether agricultural activities were established prior to adjacent nonagricultural activities, application of the criterion for exemption from the emissions standard may depend on the whimsy of future directors or who can produce more compelling evidence from an arbitrary point in time.

{¶ 26} Although we overrule as moot appellants' second assignment of error, we suggest that OEPA consider whether rulemaking is warranted to establish standards by which to evaluate whether agricultural activities were established prior to adjacent nonagricultural activities.

{¶ 27} For the foregoing reasons, we sustain appellants' first assignment of error and overrule as moot appellants' second assignment error. ERAC's order is reversed, and this case is remanded for further proceedings consistent with this decision.

Order reversed
and cause remanded.

TYACK, P.J., and DESHLER, J., concur.